**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heriberto Martinez Ortiz, et al., | No. CV-17-00164-TUC-RM |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Nogales, et al., | |
| Defendants. | |

Plaintiffs Heriberto Martinez Ortiz ("Ortiz") and Nora Morales ("Morales") filed a Complaint against Defendants City of Nogales and various individual defendants on April 12, 2017. (Doc. 1.) The case was thereafter stayed pending the conclusion of an underlying state-court criminal proceeding against Ortiz. (Doc. 26.) Ortiz was ultimately found guilty of misdemeanor theft in that underlying state-court proceeding. (Docs. 35, 45.) Ortiz did not appeal his conviction or sentence, and they are now final under Arizona law. (Doc. 45.)

With leave of Court (Doc. 46), Plaintiffs filed a First Amended Complaint ("FAC") on June 13, 2019. (Doc. 47.) Pending before the Court is Defendants' Motion to Dismiss Plaintiff's FAC. (Doc. 48.) Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs' claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). (*Id.*) The Motion is fully briefed. (Docs. 51, 52.) All pending deadlines set forth in the Court's Scheduling Order (Doc. 41) have been stayed pending resolution of the Motion to Dismiss. (Doc. 49.) For the reasons discussed

below, Defendants' Motion to Dismiss will be granted.[1]

I. **Allegations of Plaintiff's First Amended Complaint**

Plaintiffs' FAC alleges the following:

Plaintiffs are a married couple residing in Santa Cruz County, Arizona. (Doc. 47 at 2.) Defendant Derek K. Arnson ("Arnson") was at all relevant times the Chief of Police for the City of Nogales Police Department ("NPD"), and he is sued in both his official and individual capacities. (*Id.*) Defendants Sergeant Joaquin Lopez ("Sergeant Lopez"), Officer Amador Vasquez ("Officer Vasquez"), and Sergeant Roberto Fierros ("Sergeant Fierros") were at all relevant times employed by the NPD, and they are sued in their individual capacities; Sergeant Lopez is also sued in his official capacity. (*Id.* at 2-3.) Plaintiffs also name Defendants' wives as Jane Doe defendants. (*Id.* at 1-3.)

On March 9, 2016, an individual named Jose Nohe Garcia ("Garcia") reported the theft of a generator and impact wrench from a jobsite on property owned by La Loma Grande, LLC ("La Loma"). (Doc. 47 at 4.) The theft occurred on March 6, 2016. (*See id.* at 5.) Garcia provided the NPD with surveillance camera photos that captured the partial face of an individual and a truck leaving the area with what appeared to be a generator in its bed. (*Id.* at 4.) Garcia told the police that the photo of the partial face was taken on February 28, 2016 and the photo of the truck was taken on March 6, 2016; however, the photo of the truck was date-stamped March 7, 2016. (*Id.* at 4-5.) Garcia indicated he believed that the individual in the photo taken on February 28, 2016, who had damaged the surveillance camera, was a possible suspect for the theft that occurred on March 6, 2016. (*Id.* at 5.) Garcia had no evidence to support that belief. (*Id.*)

On March 11, 2016, without further investigation, Sergeant Fierros issued a press release to the Nogales International with the photo of the partial face, indicating that the individual in the photo was wanted for theft and requesting public assistance in locating him. (Doc. 47 at 5.) The NPD also posted both of the surveillance photos on its Facebook page. (*Id.*) Sergeant Fierros misled the public because the two photos were

---
[1] The Court finds the Motion suitable for decision without oral argument.

- 2 -

taken on different dates. (*Id.*)

Sergeant Lopez, who was in charge of the NPD's criminal investigation division, had a vendetta against Morales arising from a familial relationship and prior police incident. (*Id.* at 5-8.) Even though Sergeant Lopez's departmental cell phone number was not published in the press releases concerning the theft, he claims that on April 10, 2016, an anonymous male called him on his departmental cell phone and told him that the individual in the February 28, 2016 surveillance photo was Ortiz. (*Id.* at 5, 7-8.) According to Sergeant Lopez, the anonymous caller provided Ortiz's address, indicated that the truck in the surveillance photo was parked behind Ortiz's residence, and stated that the truck had been spray painted days after the surveillance photos were released by the NPD. (*Id.* at 8.) Sergeant Lopez intentionally failed to save the number of the anonymous caller, resulting in the destruction of exonerating evidence. (*Id.* at 7.) Sergeant Lopez's "destruction of the witness information and his false reporting" ultimately "resulted in fabricat[ed] criminal charges marshaled against Plaintiff Ortiz." (*Id.*)

Sergeant Lopez concluded without further investigation that Ortiz had committed the theft. (Doc. 47 at 8.) Sergeant Lopez assigned the investigation to Officer Vasquez, who also concluded that the surveillance photo depicted Ortiz. (*Id.* at 8-9.) Neither Sergeant Lopez nor Officer Vasquez have any training or expertise in facial recognition. (*Id.* at 9.) Sergeant Lopez provided Officer Vasquez with inaccurate information about what the anonymous tipster had said. (*Id.* at 8-9.)

Sergeant Lopez and Officer Vasquez arrested Ortiz at his gym and transported him to a detention facility. (*Id.* at 10.) At the detention facility, Officer Vasquez read Ortiz his *Miranda* rights and Ortiz agreed to be questioned. (*Id.* at 10.) Ortiz admitted that his wife owned a truck similar to the one captured in the surveillance photo, but he averred that it was not the same truck and that his wife's truck had been inoperable for two to three years. (*Id.* at 11.) Ortiz denied any involvement in the theft. (*Id.* at 10.)

After the interrogation, Officer Vasquez contacted Garcia, who said that he had

shown the surveillance photos to workers who had identified the individual in the photos as Ortiz and the truck as belonging to Ortiz. (Doc. 47 at 11-12.) While Ortiz was still detained, Officer Vasquez drafted a search warrant affidavit that contained deliberately misrepresented and misleading information, and Sergeant Lopez reviewed the affidavit. (*Id.* at 12.) After the search warrant was issued, numerous police officers went to Plaintiffs' residence to execute the warrant. (*Id.* at 13.)

Even though Ortiz informed Sergeant Lopez and Officer Vasquez that he had a medical condition which could cause fatal swelling attacks, the officers forced Ortiz to sit on the curb in front of his house for several hours in the sun, without food and water, while the search warrant was executed. (Doc. 47 at 13.) Ortiz and Morales were humiliated as a result of being detained on the curb in the view of neighbors. (*Id.*) During execution of the search warrant, officers seized Plaintiffs' truck and a generator that resembled the one stolen from the La Loma jobsite. (*Id.*)

On April 15, 2016, news and social media outlets reported that a tipster had helped the NPD arrest the man seen in the La Loma surveillance photos. (Doc. 47 at 13.) The NPD's press release included a booking photo of Ortiz that was over a decade old, tainting Ortiz's reputation in his community. (*Id.* at 13-14.) After Ortiz's arrest and the issuance of the press release containing the booking photo, Officer Vasquez began an investigation and found that individuals who Garcia claimed had identified Ortiz and the truck denied having made any such identifications. (*Id.* at 14.)

On August 15, 2016, Ortiz and Morales were charged with false reporting and theft in Santa Cruz Justice Court, and local media reported the charges. (Doc. 47 at 14.) The charges were later dismissed because the case was referred to the Nogales City Attorney's Office. (*Id.*) On October 24, 2016, a new complaint was filed against Ortiz only, charging Ortiz with theft. (*Id.* at 14-15.) A facial recognition expert hired by Plaintiffs concluded that it was highly likely that the February 28, 2016 surveillance photo depicted someone other than Ortiz. (*Id.* at 14.) Plaintiffs provided a copy of the facial recognition expert's report to the Nogales City Attorney's Office. (*Id.*)

On February 14, 2017, Officer Vasquez spoke to Ortiz's neighbor, failed to record the interview, and fabricated what the neighbor told him. (Doc. 47 at 15.)

At a suppression hearing held in Nogales City Court on March 29, 2017, the Honorable Mayra J. Galindo found that there was no probable cause for the issuance of the search warrant of Plaintiffs' residence but declined to suppress evidence obtained as a result of the warrant because Officer Vasquez had relied in good faith on what Sergeant Lopez had told him. (*Id.*)

On the basis of the above factual allegations, Plaintiffs assert fifteen claims for relief: (1) arrest, detention, and prosecution without probable cause, in violation of the Fourth and Fourteenth Amendments; (2) failure to disclose material exculpatory evidence in violation of the Fourth and Fourteenth Amendments; (3) "blatant disregard for Mr. Ortiz's innocence" resulting in the violation of Ortiz and Morales's due process and equal protection rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments; (4) false arrest and false imprisonment; (5) assault and battery; (6) negligence; (7) *Monell* municipal liability[2]; (8) respondeat superior liability for state-law violations; (9) inadequate training and supervision; (10) defamation; (11) false light; (12) intentional infliction of emotional distress; (13) negligent infliction of emotional distress; (14) punitive damages; and (15) loss of consortium. (Doc. 47 at 15-27.) Claims 1-3 and 7 are brought under 42 U.S.C. § 1983; claims 4-6, 8-13, and 15 are brought under state law.[3] (*Id.*) Claim 14 seeks punitive damages with respect to federal and state claims. (*Id.* at 26-27.) In addition to compensatory, special, and punitive damages, Plaintiffs seek costs, interest, and attorneys' fees. (*Id.* at 28-29.)

The FAC includes conclusory allegations that the violations of Plaintiffs' civil rights did not result in and were not the cause of Ortiz's criminal conviction or sentence, and that Plaintiffs are not challenging Ortiz's conviction or sentence in this action. (Doc.

---

[2] *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).
[3] Plaintiffs indicate that the assault and battery alleged in Count 4 "violated Plaintiffs['] statutory, common law rights as guaranteed by the laws and Constitutions of the United States and State of Arizona." (Doc. 47 at 20.) However, the claim is labeled as a common-law assault and battery claim, rather than an excessive force claim brought under 42 U.S.C. § 1983.

47 at 4.) However, the FAC also alleges that Ortiz was innocent of the theft for which he was ultimately convicted, that Defendants knew or should have known of his innocence and performed an incompetent investigation, and that Defendants' conduct caused Plaintiffs to suffer damages "in the form of costs incurred to defend" against the criminal prosecution, Ortiz's loss of liberty, and "mental and physical pain, suffering, anguish and distress" arising from Ortiz's arrest and detention. (*Id.* at 18-19, 21-22.)

## II. Standard of Review

A dismissal under Federal Rule of Civil Procedure 12(b)(6) "may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation omitted). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A court evaluating a motion to dismiss must view the complaint "in the light most favorable to the plaintiff." *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990). All well-pleaded factual allegations of the complaint must be accepted as true; however, legal conclusions and other conclusory statements are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678-79, 681.

## III. Discussion

A § 1983 plaintiff is barred from recovering damages for an "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas

corpus." *Heck*, 512 U.S. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id.* at 487 (emphasis in original).

A § 1983 damages action is *Heck*-barred if "a judgment in favor of the plaintiff would necessarily imply the invalidity" of the plaintiff's outstanding criminal conviction or sentence. *Heck*, 512 U.S. at 487. However, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (emphasis in original). In certain factual scenarios, a § 1983 plaintiff may successfully challenge the constitutionality of underlying events that led to an outstanding criminal conviction without necessarily implying the invalidity of that conviction. *See Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006) (claim alleging excessive force during arrest not *Heck*-barred because it did not necessarily preclude possibility that § 1983 plaintiff was guilty of crimes for which he was later convicted); *see also Lockett v. Ericson*, 656 F.3d 892, 895-97 (9th Cir. 2011) (claim challenging legality of search that led to § 1983 plaintiff's arrest not *Heck*-barred where subsequent conviction was obtained via nolo contendere plea, without the use of any of the allegedly illegal evidence). However, claims alleging wrongful arrest and malicious prosecution necessarily imply the invalidity of convictions resulting from the arrest and prosecution, as the alleged wrongs "could not have occurred unless [the § 1983 plaintiff] were innocent of the crimes for which he was convicted." *Guerrero*, 442 F.3d at 703. Furthermore, a claim challenging the search and seizure of evidence upon which a § 1983 plaintiff's outstanding convictions were based is non-cognizable under *Heck*. *See Whitaker v. Garcetti*, 486 F.3d 572, 584 (9th Cir. 2007).

Here, it is undisputed that Plaintiff's criminal conviction and sentence have not "been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. Accordingly,

*Heck* bars Plaintiff's § 1983 claims if a judgment in favor of Plaintiff on those claims would necessarily imply the invalidity of Plaintiff's conviction or sentence.

Plaintiffs allege in Claim 1 that Ortiz was arrested, detained, and prosecuted without probable cause, and that Defendants provided false information to bolster the criminal case against him. (Doc. 47 at 15-16.) In Claim 2, Plaintiffs allege that Defendants arrested Ortiz and initiated criminal proceedings against him based on false and fabricated information. (*Id.* at 17.) They further allege that Defendants withheld and misrepresented information to the judge that issued a search warrant for Plaintiffs' residence, thereby causing Plaintiffs to suffer damages arising from Ortiz's arrest and criminal prosecution. (*Id.* at 17-18.) In Claim 3, Plaintiffs allege that "Defendants' blatant disregard for Mr. Ortiz's innocence" caused Ortiz to be unlawfully arrested, detained, and separated from Morales, thereby violating Plaintiffs' due process and equal protection rights. (*Id.* at 18-19.) In Claim 7, Plaintiffs allege that Defendants' conduct "was a direct consequence of the customs, practices, policies and ratification" of Defendants City of Nogales and Arnson. (*Id.* at 22.)

The gravamen of Plaintiffs' § 1983 claims is that Defendants' alleged misconduct caused Ortiz to be arrested and prosecuted even though he is innocent of the theft for which he was ultimately convicted. By resting on the premise of Ortiz's innocence, the claims necessarily imply the invalidity of Ortiz's outstanding conviction; therefore, the claims are barred under *Heck* and must be dismissed. To the extent that Claim 2 alleges a judicial deception claim arising from false or omitted information in Defendants' search warrant affidavit, that claim is also barred by *Heck*. *See Whitaker*, 486 F.3d at 583-84 (finding that judicial deception claim alleging defendants falsified warrant application was *Heck*-barred).[4] Claim 14 must also be dismissed to the extent it seeks punitive damages on the non-cognizable § 1983 claims.

---

[4] The Court notes that Plaintiffs affirmatively allege that a motion to suppress evidence seized during the execution of the search warrant of their residence was denied prior to Ortiz's jury trial. (Doc. 47 at 15.) Accordingly, this case is distinguishable from *Lockett*, in which the plaintiff's conviction was obtained without the use of any evidence seized during an allegedly illegal search. 656 F.3d at 895-97.

Plaintiffs' § 1983 claims cannot be cured by amendment, since the claims hinge on Ortiz's innocence and thus are clearly *Heck*-barred. Furthermore, Plaintiffs have already been afforded the opportunity to amend their Complaint after being put on notice of the possibility of a *Heck*-bar (*see* Docs. 45, 46), and their FAC fails to cure the deficiencies of the original Complaint, instead simply adding conclusory allegations that are not entitled to a presumption of truth and are at odds with the FAC's specific factual allegations. (*See, e.g.*, Doc. 47 at 4.) Accordingly, the Court declines to offer a further opportunity for amendment. However, because a later invalidation of Ortiz's conviction could render Plaintiffs' § 1983 claims cognizable, the Court will dismiss the § 1983 claims without prejudice.

Defendants argue that this Court should also dismiss Plaintiffs' state-law claims under *Heck* and the doctrines of issue and claim preclusion. (Doc. 48 at 1-2.) However, Defendants have not shown that *Heck* applies to state-law claims, and they have inadequately briefed their issue- and claim-preclusion arguments. Instead of addressing Plaintiffs' state-law claims on the merits, the Court declines to exercise supplemental jurisdiction over those claims. Plaintiffs' FAC alleges that this Court's subject-matter jurisdiction rests on federal-question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a). (Doc. 47 at 2.) Plaintiffs do not allege that the Court has diversity jurisdiction over the state-law claims, nor do their factual allegations support the exercise of diversity jurisdiction. (*See id.* at 2-3 (alleging that Plaintiffs and Defendants are all residents of Arizona).) Accordingly, jurisdiction over Plaintiffs' state-law claims exists only under 28 U.S.C. § 1367, the supplemental jurisdiction statute. Pursuant to that statute, the Court may decline to exercise supplemental jurisdiction over a claim if "it has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also San Pedro Hotel Co. v. Los Angeles*, 159 F.3d 470, 478-79 (9th Cir. 1998). Because *Heck* requires the dismissal of the federal claims over which this Court has original jurisdiction, the Court will dismiss Plaintiffs' state-law claims for lack of jurisdiction.

In their Motion to Dismiss, Defendants summarily request an award of attorneys'

fees and costs under A.R.S. §§ 12-341 and 12-341.01. (Doc. 48 at 13-14.) Because the Court has decided only those claims over which it has federal-question jurisdiction, any award of attorneys' fees and costs is properly governed by federal law. *See* 42 U.S.C. § 1988(b); Fed. R. Civ. P. 54(d). If Defendants file a bill of costs and/or motion for attorneys' fees, they shall comply with all applicable rules, including Federal Rule of Civil Procedure 54 and Local Rules of Civil Procedure 54.1 and 54.2.

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 48) is **granted**, as set forth above.

**IT IS FURTHER ORDERED** that Plaintiffs' federal claims are **dismissed without prejudice**. Plaintiffs' state-law claims are **dismissed for lack of jurisdiction**. The Clerk of Court is directed to enter judgment accordingly and close this case.

Dated this 27th day of September, 2019.

_____
Honorable Rosemary Márquez
United States District Judge